UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Maria Lee,

          Plaintiff,          Case No. 25-10986

v.                                Judith E. Levy
                                 United States District Judge

Lucas Terpstra, *et al.*,[1]
                                 Mag. Judge Anthony P. Patti

          Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS GRAND PRAIRIE HEALTHCARE SERVICES, SHERYL GONZALEZ, AND SARAH GDOWSKI'S MOTION TO DISMISS [8]**

Maria Lee ("Ms. Lee"), individually and on behalf of her deceased husband Michael Lee ("Mr. Lee"), brings suit against Lucas Terpstra, Sheryl Gonzalez, Sara Gdowski, Grand Prairie Healthcare Services ("Grand Prairie"), and a Jane/John Doe who was the Health Information Manager for MDOC at the facility pursuant to state law and § 1983, alleging that they violated Mr. Lee's Eighth Amendment right against

---

[1] Defendant Terpstra is identified only with his last name in the complaint. On June 17, 2025, Terpstra filed an answer to the complaint and identified his first name as Lucas. (ECF No. 12.)

excess punishment. (ECF No. 1, PageID.13–16.) Ms. Lee also brings one count of Loss of Consortium against all Defendants. (*Id.* at PageID.16.)

Before the Court is Defendants Grand Prairie, Sheryl Gonzalez, and Sarah Gdowski's motion to dismiss (the "Corporate Defendants' motion to dismiss"). (ECF No. 8.) For the reasons set forth below, the Corporate Defendants' motion to dismiss is granted.

**I.   Background**

Michael Lee was incarcerated at the Parnall Correctional Facility ("SMT") in Jackson, Michigan, when he died. On March 20, 2022, Mr. Lee was incarcerated at a different facility, Kinross Correctional Center, and notified their staff that his hernia was getting bigger. (ECF No. 1, PageID.5.)

In April of 2022, Mr. Lee was diagnosed with a "large ventral hernia with diastasis." (*Id.* at PageID.6.) It was determined that Kinross Correctional Center could not provide the necessary treatment, and he was transferred to SMT and a request was made for him to receive surgery for his hernia. (*Id.*) After Mr. Lee was transferred to SMT, he sent kites requesting the surgery on May 11, May 30, June 1, July 7, and

2

September 12, 2022. (*Id.*) During this time period, he complained of abdominal pain, rectal bleeding, and bloody urine.

On June 3, 2022, Nurse Dawn Eicher responded to Mr. Lee's kite and told him that his surgery was approved and scheduled. (*Id.*) On August 10, 2022, Stacy Lindahl informed him through a kite that a general surgeon consult had been approved for his hernia. (*Id.* at PageID.7.) On September 12, 2022, Mr. Lee was told through a kite that his surgical consult was still pending. (*Id.*) Lee also regularly saw medical providers at SMT for check-ups and for new health issues. Beyond his abdominal pain, rectal bleeding, and bloody urine, he also experienced diaphoresis (sweating), shortness of breath, and ongoing chest pain. (*Id.*) The complaint alleges that Mr. Lee's medical issues were never properly addressed. The complaint also states that SMT's Health Information Manager, the John Doe Defendant, had the responsibility to schedule Mr. Lee's hernia surgery and that they never scheduled the surgery or the surgical consult. (*Id.*)

On September 20, 2022, Mr. Lee was sent to Henry Ford Allegiance Hospital ("Henry Ford") and had a chest exam because he complained of pain in his chest. (*Id.* at PageID.8.) The chest exam notes stated, "New

3

irregular opacity in the inferolateral left lung base closely associated with the lingula measuring 2.4 cm." and "Recommend a dedicated CT of the chest with IV." (*Id.*)

On September 21, 2022, Mr. Lee returned to SMT. (*Id.*) The next day, September 22, 2022, Mr. Lee was seen by Nurse Practitioner Gonzalez, who recorded that Mr. Lee complained of chest pain and that he said, "I went into a-fib again (2 days ago), it scares me to death." (*Id.*) Also on September 22, Mr. Lee went to the Henry Ford emergency department, complaining of severe chest pain. There, he was diagnosed "with a return of his atrial fibrillation and increased stenosis." (*Id.*) Mr. Lee was given Metoprolol and a new stent in his heart. He was instructed that he should have a follow-up appointment with cardiology two weeks after his discharge. (*Id.* at PageID.9.)

Mr. Lee was discharged on October 5, 2022; thus, his cardiology follow-up appointment should have been around October 19, 2022. (*Id.*) The complaint alleges that SMT's Health Information Manager failed to schedule his cardiology follow-up exam, and, in fact, Mr. Lee never had that appointment. (*Id.* at PageID.9–10.)

4

On October 7, 2022, Mr. Lee was seen by Nurse Practitioner Gdowski "to discuss his recent surgeries." (*Id.* at PageID.9.) On October 13, 2022, Nurse Practitioner Gonzalez wrote a note in Mr. Lee's medical records stating, "cardiology requested 2 week follow up after discharge. 407 submitted and approved for cardiology follow up on 10-11-22, no appointment date scheduled. 30 day follow up scheduled." (*Id.*) Plaintiff believes "30 day follow up scheduled" meant that, in 30 days, Gonzalez would check if the follow-up was scheduled.

On October 25, 2022, Mr. Lee called his wife, Ms. Lee, and told her he "didn't feel good." (*Id.* at PageID.10.) Another incarcerated person, Tommy Garlin, told Defendant Terpstra multiple times in the morning of October 25 that Mr. Lee needed medical assistance. (*Id.*) Terpstra told Garlin that it "was not his job to call healthcare," and never called healthcare. (*Id.*)

That afternoon, Mr. Lee went into cardiac arrest. A correctional officer saw Mr. Lee turning blue and called medical. (*Id.*) When medical help arrived, Mr. Lee was unresponsive and did not have a pulse. (*Id.*) He was taken by ambulance to Henry Ford and pronounced dead at 3:14 p.m. (*Id.* at PageID.10–11.) The cause of death was listed as "myocardial

infraction and hypertensive atherosclerotic cardiovascular disease." (*Id.* at PageID.11.)

The complaint alleges that Grand Prairie and non-party Wellpath LLC were the private healthcare entities responsible for providing healthcare to incarcerated people at his facility, and that they "implemented policies and procedures that caused Mr. Lee unnecessary suffering and ultimately, his death." (*Id.* at PageID.11.) The policies are:

1. Using multiple primary care providers for each incarcerated person.

2. Delaying treatment for incarcerated people to reduce costs.

3. Providing inadequate training in managing complex health issues, such as patients with multiple health conditions, providers, medications, therapies.

(*Id.* at PageID.11–13.)

## II. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### III. Analysis

#### A. Gonzalez and Gdowski

Plaintiff brings suit pursuant to 42 U.S.C. § 1983 against Gdowski and Gonzalez, alleging that they violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. (ECF No. 1, PageID.13.)

A plaintiff who claims they received inadequate medical care in violation of the Eighth Amendment violation must allege both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively,

7

'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, to fulfil the subjective component, the official must have been deliberately indifferent to inmate health or safety. *Id.*

There is no dispute that Plaintiff has alleged an objectively serious medical need. Defendants argue that Plaintiff fails to allege the subjective prong as to Gonzalez and Gdowski.

The subjective component requires "a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety." *Flanory*, 604 F.3d at 254. "This standard is met if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Brown*, 207 F.3d at 867). A "culpable state of mind" is described as "more blameworthy than negligence." *Farmer*, 511 U.S. at 834. "[A]llegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012).

Plaintiff claims that nurse practitioners Gdowski and Gonzalez are liable because they were aware that Mr. Lee required a follow-up appointment with a cardiologist after he was discharged from the hospital but did not ensure that he returned for the follow-up. (ECF No. 1, PageID.14.) Plaintiff acknowledges that both nurse practitioners "lacked the ability to unilaterally schedule an offsite appointment for Mr. Lee," but maintains that they should have scheduled their own appointments with Mr. Lee to monitor his health pending the cardiology follow-up. Plaintiff also argues that Gonzalez's October 13, 2022 note stating that she would check in 30 days if Mr. Lee's cardiology appointment was scheduled, even though the cardiologist follow-up was supposed to occur around October 19, 2022, demonstrates Gonzalez's indifference. (*Id.* at PageID.9, 14.)

The Court finds that the allegations in the complaint are insufficient to state a claim against Gonzalez or Gdowski because they do not satisfy the subjective prong of the Eighth Amendment. Gonzalez and Gdowski's failure to monitor Mr. Lee's health more frequently between October 5 and 25, 2022, does not demonstrate deliberate indifference. There are no allegations that Mr. Lee complained about any particular

symptom during that period of time, nor are there allegations that he requested medical appointments. There is no indication that Gdowski or Gonzalez deliberately ignored Mr. Lee or refused to treat him. In fact, Mr. Lee was seen by Gdowski during that period of time on October 7, 2022. (ECF No. 1, PageID.9.)

Plaintiff compares this case with *Verser v. Elyea*, 113 F. Supp. 2d 1211 (N.D. Ill. 2000). (ECF No. 11, PageID.80.) In *Verser*, the plaintiff's Eighth Amendment claim against a doctor was not dismissed because the doctor was deliberately indifferent; he "declined to follow the recommendations of an orthopedic specialist, which he is not, without even examining the patient, despite repeated complaints of pain and injury" and "did not even take steps to ensure that [the plaintiff] was able to complete the program of treatment that he himself approved." *Id.* at 1215. Here, however, there are no allegations that Gonzalez or Gdowski purposefully ignored recommendations regarding treatment or that Plaintiff complained between October 5 and 25, 2022, but was ignored. Gonzalez and Gdowski are not cardiologists (and thus could not do the cardiology follow-up appointment) and the complaint acknowledges that

10

they "lacked the ability to unilaterally schedule an offsite appointment for Mr. Lee." (ECF No. 1, PageID.14.)

As such, Plaintiff's Eighth Amendment claims against Gonzalez and Gdowski are dismissed.

### B. Grand Prairie

Defendants also argue that Plaintiff's Eighth Amendment claim against Grand Prairie should be dismissed. (ECF No. 8, PageID.58.)

Private corporations that "perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law." *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) (quoting *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). "However, private corporations cannot be held liable on the basis of respondeat superior or vicarious liability." *Id.* Plaintiff must allege that the entity was the "'moving force' behind the injury alleged." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 581 (6th Cir. 2020) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)). Specifically, Plaintiff must show that the entity had a policy or custom that caused a constitutional violation. *Id.*

11

Here, Defendants argue that Plaintiff's claims against Grand Prairie must be dismissed because her claims against Gonzalez and Gdowski fail. (ECF No. 8, PageID.59–60 (citing *Chambers v. Sanders*, 63 F.4th 1092, 1102 (6th Cir. 2023)).) However, Plaintiff appears to allege that Grand Prairie violated Mr. Lee's constitutional rights in ways that do not depend specifically on Gonzalez and Gdowski's actions. For example, Plaintiff does not allege that Gonzalez and Gdowski are responsible for or even involved in the delayed surgery for Mr. Lee's hernia, but that nonetheless Grand Prairie's policies caused the delay. (ECF No. 1, PageID.15.) Regardless, Plaintiff's *Monell* claims against Grand Prairie must be dismissed because Plaintiff's allegations are inadequate to sustain this claim.

First, Plaintiff claims that Grand Prairie "maintained a policy of using multiple primary care providers for each incarcerated person at SMT" which resulted in difficulty in obtaining records related to Mr. Lee and prevented "any single provider from having the necessary familiarity with their patients to provide comprehensive care." (ECF No. 1, PageID.11–12.). But Plaintiff does not describe how Grand Prairie's staff failed to provide Mr. Lee with necessary care with regard to his hernia or

12

his chest pain. Based on the complaint, Mr. Lee's hernia required care from an outside provider, not from Grand Prairie employees. (ECF No. 1, PageID.6–7.) Regarding Mr. Lee's chest pain, there is no indication that Gdowski or Gonzalez deliberately ignored Mr. Lee or refused to treat him for those symptoms. *See supra* III.A. Because Plaintiff does not allege that Grand Prairie employees provided inadequate care, there is no underlying constitutional violation and Plaintiff's *Monell* claim against Grand Prairie on that basis must be dismissed.

For these same reasons, Plaintiff's failure-to-train *Monell* claim is insufficient. Plaintiff claims that Grand Prairie inadequately trained its employees in "managing complex health issues where patients have multiple health conditions, providers, medications, and/or therapies" and that this inadequate training resulted in Mr. Lee's delayed hernia care, "fragmented medical care," and "lack of adequate medical monitoring after his heart surgery at the end of September of 2022." (ECF No. 1, PageID.12–13.) But Plaintiff has not alleged inadequate care from Grand Prairie employees and thus cannot bring a *Monell* claim based on those alleged failures.

Finally, Plaintiff claims that Grand Prairie "maintained a policy of delaying treatment for incarcerated persons to reduce their costs at the expense of the health of incarcerated persons" and that this policy included understaffing and "maintaining a limited number of approved off-site medical providers." (ECF No. 1, PageID.12.) Plaintiff also appears to allege that Grand Prairie's policy included "conservative treatment." (*Id.*)[2] Plaintiff argues that this policy led to Mr. Lee's hernia surgery being "significantly delayed," which caused him pain and suffering. (*Id.*) The Court finds that alleged policies of "understaffing" and "conservative treatment" are not sufficiently pled because Plaintiff does not explain, nor is it clear to the Court, how such policies could have led to the delayed hernia surgery. Plaintiff alleges that it was the SMT's Health Information Manager responsibility—not Grand Prairie's responsibility—to schedule the offsite hernia surgery. (*Id.* at PageID.7.) Finally, Plaintiff's allegation that Grand Prairie "maintain[ed] a limited number of approved off-site medical providers" is insufficiently pled.

---

[2] The complaint states, "Defendant Grand Prairie and non-party Wellpath LLC effectuated this policy by going beyond conservative treatment." (ECF No. 1, PageID.12.) This appears to be an error, and the Court will construe this statement as meaning that Grand Prairie withheld treatment.

14

Plaintiff must "allege sufficient facts to establish that the alleged constitutional violation happened '*because of* the execution of [Grand Prairie's] policy.'" *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). But Plaintiff's allegations do not explain how Grand Prairie's "limited number of approved off-site medical providers" caused the SMT's Health Information Manager's failure to schedule Mr. Lee for hernia surgery. Plaintiff's conclusory allegation that this alleged policy caused the delay in Mr. Lee's hernia treatment is not sufficient.

For the reasons set forth above, Plaintiff's *Monell* claims against Grand Prairie are dismissed.

### C. Loss of Consortium

In addition, the Court dismisses Plaintiff's loss of consortium claims against Gonzalez, Gdowski, and Grand Prairie. (*See* ECF No. 1, PageID.16.) A Michigan loss of consortium claim "is a separate cause of action" but is derivative. *Wesche v. Mecosta Cnty. Rd. Comm'n*, 267 Mich. App. 274, 279 (2005), *aff'd*, 480 Mich. 75 (2008). In other words, Plaintiff's loss of consortium claim "'stands or falls' with the underlying claim."

*Nationwide Recovery, Inc. v. City of Detroit*, No. 17-CV-12378, 2018 WL 3997850, at *5 (E.D. Mich. Aug. 21, 2018) (quoting *Boyer v. Lacy*, 665 F. App'x 476, 484 (6th Cir. 2016) (Stranch, J., dissenting)). Because Plaintiff's underlying Eighth Amendment claims against Gonzalez, Gdowski, and Grand Prairie are dismissed, so too are Plaintiff's loss of consortium claims against these same Defendants.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS Defendants Gonzalez, Gdowski, and Grand Prairie's motion to dismiss. (ECF No. 8.)

IT IS SO ORDERED.

Dated: October 20, 2025      s/Judith E. Levy
Ann Arbor, Michigan     JUDITH E. LEVY
    United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 20, 2025.

    s/William Barkholz
    WILLIAM BARKHOLZ
    Case Manager